UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN BRIAN CLARK, JBC Structured Products LLC, and MARATHON CAPITAL LLC<br><br>　　　　　　　Plaintiffs<br><br>SYSTEM1, INC.,<br>a Delaware limited company,<br><br>　　　　　　　Defendants | )<br>)<br>)<br>)　Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

Plaintiffs, John Brian Clark ("Clark"), JBC Structured Products LLC ("JBC"), and Marathon Capital LLC ("Marathon") (collectively "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against the Defendants, System1, Inc. ("System1"), allege and state as follows:

## I. PARTIES TO THE ACTION

1. Plaintiff John Brian Clark is a resident of Collier County, in the City of Naples, State of Florida.

2. Plaintiff JBC Structured Products LLC is a limited liability company incorporated in the State of Pennsylvania with its principal place of business in New Hope, Pennsylvania. JBC is owned by Plaintiff Clark.

3. Plaintiff Marathon Capital LLC is a limited liability company incorporated in the State of Florida, with its principal place of business in Miami Beach Florida. Jonathan Levene ("Levene") is the managing member of Marathon. Levene is a resident of Ocean County, in the City of Toms River, State of New Jersey.

4. Upon information and belief, Defendant System1, Inc., is a business entity believed to be a Delaware corporation with its headquarters located in Marina Del Ray, CA.

5. System1 went public on January 28, 2022.

6. System1's common stock is traded on the New York Stock Exchange under the ticker "SST."

## II. JURISDICTION AND VENUE

7. Pursuant to Title 28, United States Code, Section 1331, this Court has subject matter jurisdiction because this dispute arises under the securities laws of the United States. This dispute necessarily raises a substantial question of federal law: whether the underlying securities Warrants were registered under the Securities Act of 1933 as of December 20, 2021, the date the Form S-4 was declared effective by the SEC.[1]

8. Plaintiffs purchased SST Warrants that gave Plaintiffs the right to buy a share of System1 common stock for a specific price within a set window of time or by a specific date.

9. Pursuant to Title 28, United States Code, Section 1391, this Court has personal jurisdiction based upon the terms of the relevant Warrant Agreement (Exhibit A). Under Section 9.3 of the Warrant Agreement between Trebia Acquisition Corp. and Continental Stock Transfer & Stock Company, dated June 19, 2020, subsequently assumed by System1, System1 (formally Trebia Acquisitions Corp.) "irrevocably submit[ted]" to the jurisdiction of "the courts of the State of New York or the United States District Court for the Southern District of New York" and gave those courts exclusive jurisdiction over "any action, proceeding or claim arising out of, or

---

[1] https://www.sec.gov/Archives/edgar/data/1805833/999999999521004763/xslEFFECTX01/primary_doc.xml

otherwise based on, this Agreement." System1 further "waive[ed] any objection to such exclusive jurisdiction and that such courts represent an inconvenient forum." *See* Exhibit A, § 9.3.

### III.   FACTUAL ALLEGATIONS

*Background System1*

10. A public company, Trebia Acquisition Corp., ("Trebia"), a blank check company, entered a Business Combination Agreement (the "BCA" Exhibit B) on or about June 28, 2021, with numerous different entities.

11. The BCA was amended on November 20, 2021, January 10, 2022, and January 25, 2022.

12. The parties to the BCA consist of the following: Trebia Acquisition Corp., a Cayman Islands exempted company ("Trebia"), S1 Holdco, LLC, a Delaware limited liability company ("S1 Holdco"), System1 Midco, LLC, a Delaware limited liability company ("S1 Midco"), System1 S1, LLC, a Delaware limited liability company ("S1, LLC"), OpenMail LLC, a Delaware limited liability company ("OpenMail"), Orchid Merger Sub I, Inc., a Delaware corporation and direct, wholly owned subsidiary of Trebia ("Trebia Merger Sub"), Orchid Merger Sub II, LLC, a Delaware limited liability company ("Trebia Merger Sub LLC"), Orchid Finco, LLC, a Delaware limited liability company ("Trebia Finco LLC"), CSC III System1 Blocker Inc., a Delaware corporation ("CSC Blocker 1"), CSC (Offshore) III System1 Blocker, Inc., a Delaware corporation ("CSC Blocker 2"), CSC III-A System1 Blocker, Inc., a Delaware corporation ("CSC Blocker 3" and, together with CSC Blocker 1 and CSC Blocker 2, the "CSC Blockers"), Court Square Capital Partners III, L.P., a Delaware limited partnership ("Court Square III L.P."), Court Square Capital Partners (Offshore) III, L.P., a Cayman Islands limited partnership ("Court Square (Offshore) L.P."), Court Square Capital Partners III-A, L.P., a Delaware limited partnership

("Court Square III-A L.P." and, together with Court Square III L.P. and Court Square (Offshore) L.P., the "Blocker Parents"), Court Square Capital GP III, LLC, a Delaware limited liability company ("Court Square Capital GP"), Court Square Capital Partners (Executive) III, L.P., a Delaware limited partnership ("Court Square Executive" and, together with Court Square Capital GP and Court Square III L.P., the "Court Square GPs"), System1 SS Protect Holdings, Inc., a Delaware corporation ("Protected"), the Persons listed on Exhibit L of the BCA (collectively, the "Redeemed OM Members"), Trasimene Trebia, LP ("Trasimene Sponsor"), BGPT Trebia LP ("BGPT Sponsor" and, together with Trasimene Sponsor, the "Founders"). Exhibit B, page 1.

13. The post-closing company is System1, Inc., the Defendant in this matter.

14. Following the consummation of the Business Combination, the combined company, a/k/a System1, Inc., is organized as an "Up-C" structure, in which substantially all of the assets and business of System1 are to be held by the subsidiaries of S1 Holdco, LLC. System1's business will continue to operate through the subsidiaries of S1 Holdco, LLC and System1 SS Protect Holdings, Inc.

15. Included in a Questions and Answers Section filed with the Form S-4. (Exhibit C), Trebia explained that domestication of Trebia will result in, among other things, the following,

- Each issued and outstanding Trebia Class A Ordinary Share was to be converted into one share of System1 Class A Common Stock;

- Each issued and outstanding Trebia Class B Ordinary Share will be converted into one share of System1 Class A Common Stock (other than Trebia Class B Ordinary Shares forfeited in connection with the Class B Forfeiture and Backstop Forfeiture); and

- The Trebia Organizational Documents were to be amended and restated by their deletion and replacement with the System1 Organizational Documents as described in this proxy statement and Trebia's name will change to "System1, Inc."

*See* Exhibit C, page 26.

16. The Domestication resulted in the conversion of Trebia Public Warrants into System1 Warrants exercisable for System1 Common Stock in accordance with their terms and the Business Combination Agreement.

17. System1 Class A Common Stock and Warrants were to begin trading on the NYSE under the symbols "SST" and "SST.WS" respectively.

### *Key Provisions of the Warrant Agreement Assumed by System1*

18. The Warrants were issued pursuant to the Warrant Agreement.

19. The terms of the Warrant Agreement are expressly incorporated into each Warrant and are enforceable against the issuer by each Warrant holder.

20. By their terms, each Warrant expired five years following the completion of the BCA (or earlier upon redemption or liquidation), Exhibit A, § 3.2.

21. The Warrant Agreement provided that the Warrants could be redeemed by System1 for $0.01 per Warrant pursuant to a timely redemption notice if the last reported sale of System1's common stock had been at least $18.00 per share on each of 20 trading days within a 30-trading day period. Exhibit A, § 6.1.

22. Section 3.3.2 of the Warrant Agreement reads, in part:

> As soon as practicable after the exercise of any Warrant and the clearance of the funds in payment of the Warrant Price ... the Company shall issue to the Registered Holder of such Warrant a book-entry position or certificate, as applicable, for the number of full shares of Class A ordinary shares to which he, she or it is entitled ...Notwithstanding the foregoing, the Company shall not be obligated to deliver any shares of Class A Ordinary Shares pursuant to the exercise of a Warrant and shall have no obligation to settle such Warrant exercise unless a registration statement under the Securities Act with respect to the Class A ordinary shares underlying the Public Warrants is then effective and a prospectus relating thereto is current, subject to the Company's satisfying its obligations under Section 7.4 or a valid exemption from registration is available.

> Exhibit A, § 3.3.2

23. Section 7.4.1 of the Warrant Agreement concerns the registration of shares of common stock, and reads in part:

> The Company agrees that as soon as practicable, but in no event later than twenty (20) Business Days after the closing of its initial Business Combination, it shall use commercially reasonable efforts to file with the Commission a registration statement for the registration, under the Securities Act, of the Class A ordinary shares issuable upon exercise of the Warrants. The Company shall use its commercially reasonable best efforts to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until the expiration or redemption of the Warrants in accordance with the provisions of this Agreement.

Exhibit A, § 7.4.1.

*Registration*

24. After prior submissions and comments from the SEC, System1 (as Trebia) filed a Third Amended Form S-4 on December 16, 2021.[2]

25. System1's legal counsel filed a letter with the SEC on December 20, 2021, requesting the "effectiveness of the Registration Statement on Form S-4," as amended on December 16, 2021. Exhibit D.

26. The Form S-4 became effective on December 20, 2021, without further requirements or comment by the SEC.[3]

27. The Form S-4 registered System1's 17,250,000 shares of Class A Common Stock, issuable upon exercise of warrants, with an exercise price of $11.50 per share.[4]

28. SEC regulations as well as the instructions for Form S-4 show that Form S-4 may be used to register *both* warrants and the common stock underlying those warrants for offer and sale on a delayed or continuous basis by the issuer. Form S-4 may be used for offerings of securities

---

[2] https://www.sec.gov/ix?doc=/Archives/edgar/data/0001805833/000119312521359382/d198034ds4a.htm
[3] https://www.sec.gov/Archives/edgar/data/1805833/999999999521004763/xslEFFECTX01/primary_doc.xml
[4] See footnote 2.

to be issued "in a transaction of the type specified in paragraph (a) of Rule 145." 17 C.F.R. § 239.25. Rule 145(a) covers an "offer, offer to sell, offer for sale, or sale" of securities related to a "merger or consolidation." 17 C.F.R. § 230.145(a)(2). Securities Act Rule 415, in turn, states that "securities which are to be issued in connection with business combination transactions," may be offered "on a continuous or delayed basis," which can occur after the closing of the business combination. 17 C.F.R. § 230.415(a)(1)(viii). The instructions for Form S-4 expressly incorporate these rules. *See* Rule as to Use of Form S-4, General Instructions A and H (applying Rule 145 and Rule 415 to permit use of Form S-4 to register securities issued in connection with business combination transactions on a delayed or continuous basis).

29. In fact, the SEC's published interpretations of its rules make clear that the Warrant Shares were *required to be* registered on Form S-4. The SEC's longstanding position is that an issuer is deemed to be offering, and thus must register, the securities underlying a convertible security (*e.g.*, the shares underlying warrants) if the convertible security can be exercised for cash (*i.e.*, sold) within 12 months. *See* SEC Division of Corporation Finance's C&DI 139.01 (stating that if a security is convertible or exercisable into the underlying security within one year of an offering, then the offering of both the Warrant and the underlying security is deemed to be taking place and "the underlying securities *must be registered* at the time the offer and sale of the convertible securities are registered") (emphasis added).

30. Indeed, John Huber, one of the principal architects of Securities Act Rule 415 and Form S-4, has offered expert testimony in another federal proceeding in which he confirms that Form S-4 "can be used to register the offer and sale of the Warrants, the resale of the Warrants, the exercise of the Warrants for cash and the resulting issuance of the common stock upon exercise of the Warrants, as well as the resale of such common stock." Expert Report of John J. Huber (cited

hereafter as "Huber Rpt.," ECF No. 34-1, ¶ 12.A, *Tang Capital Partners, LP v. BRC Inc.*, 1:22-cv-03476-RWL (S.D.N.Y. Aug. 30, 2022).

31. Similarly, a practicing securities lawyer with over 35 years' experience in private practice and at the SEC has offered expert testimony in a separate proceeding that the Form S-4 "is not limited to registering securities offered solely pursuant to the immediate business combination transaction" and "can also be used to register securities that are offered on a delayed or continuous basis, such as the shares that are exchanged for Warrants that are exercisable 30 days subsequent to the business combination." Expert Report of Walter Van Dorn, Esq. at 13, ECF No. 30-1, *Alta Partners, LLC v. Getty Images Holdings, Inc.*, No. 22-cv-8916 (S.D.N.Y. May 26, 2023).

***System1's Refusal to Permit Plaintiffs to Exercise Warrants***

32. Based on a good faith reliance on the information provided in the BCA and Warrant Agreement, Plaintiff Clark purchased Warrants between March 7, 2022 – April 1, 2022, for JBC Structured Products LLC, and between February 18, 2002 – March 8 2022, individually for a combined total of 169,902 (70,000 and 99,902 respectively) Warrants. This was a total investment of $162,840.26 ($65,540.26 and $97,300.00 respectively).

33. Based on a good faith reliance on the information provided by System1, Plaintiff Marathon purchased Warrants on March 2, 2022 – April 4, 2022, for a total of 30,510 Warrants. This was a total investment of $47,912.00.

34. With the Warrants being registered on December 20, 2021, and the BCA being closed on January 29, 2022, both conditions for holders' right to exercise their Warrants were satisfied on February 28, 2022.

35. Plaintiffs Marathon, Clark and JBC were unable to exercise their Warrants, in violation of the Warrant Agreement. Levene, on behalf of Marathon, emailed "ir@system1.com"

on March 8, 2022, inquiring about exercising his Warrant. Tridivesh Kidambi ("Kidambi"), CFO for System1 replied that an effective Form S-1 would need to be on file in order for Plaintiffs to exercise their Warrants. *See* Exhibit E, page 2.

36. Pursuant to SEC Regulation found at 17 C.F.R. § 239.25:

This [S-4] form may be used for registration under the Securities Act of 1933 of securities to be issued (a) in a transaction of the type specified in paragraph (a) of Rule 145 (§ 230.145 of this chapter); (b) in a merger in which the applicable state law would not require the solicitation of the votes or consents of all of the security holders of the company being acquired; (c) in an exchange offer for securities of the issuer or another entity; (d) in a public reoffering or resale of any such securities acquired pursuant to this registration statement; or (e) in more than one of the kinds of transactions listed in paragraphs (a) through (d) registered on one registration statement.

37. Plaintiffs continued contacting System1 through Kidambi through April 14, 2022, regarding the right to exercise Warrants.

38. A Third Amended S-1 was filed April 18, 2022,[5] which was not effective until May 4, 2022, at 4:05 P.M.[6]

39. Because System1 refused to allow Plaintiffs to rightfully exercise their Warrants, they were forced to take attempted mitigating actions.

40. Plaintiffs JBC and Clark were forced to hedge their Warrants by selling SST calls and buying SST puts, in an effort to mitigate their losses by attempting to sell stock and were forced to liquidate Warrants. JBC and Clark were eventually forced to liquidate their Warrants, resulting in significant financial damage, including $679,608.00 in lost profits.

41. Plaintiff Marathon was forced to trade its Warrants resulting in significant financial damage, including $54,800.00 in lost profits.

42. System1's erroneous conduct caused Plaintiffs substantial financial loss.

---

[5] https://www.sec.gov/Archives/edgar/data/1805833/000119312522104388/d272165ds1a.htm
[6] https://www.sec.gov/Archives/edgar/data/1805833/999999999522001004/xslEFFECTX01/primary_doc.xml

43. As a result of System1's breach of Warrant Agreement and the denial of Plaintiffs' rights to exercise their Warrants, Plaintiffs were forced to do sell calls, buy puts, trades, and/or liquidate their Warrants, resulting in a loss of millions of dollars in damages to Plaintiffs. Plaintiffs' lost profits in addition to the lost money used to purchase the Warrants.

## IV.    FIRST CAUSE OF ACTION

**(Breach of Contract Resulting in General and Compensatory Damages)**

44. Plaintiffs hereby adopt and incorporate each allegation set forth above.

45. The elements for a claim of breach of contract in New York are: (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages. See *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000).

46. The Warrant Agreement is an enforceable contract System1 expressly assumed.

47. Further, Plaintiff Clark, Plaintiff JBC, and Plaintiff Marathon are beneficiaries of the Warrants pursuant to Section 2.3.2 of the Warrant Agreement and are thereby a third-party beneficiary. Exhibit A § 2.3.2. As third-party beneficiaries, as with authority from the registered holders, Plaintiffs have rights under the Warrant Agreement pursuant to Section 9.4. Exhibit A § 9.4.

48. Plaintiffs performed all material conditions, covenants, obligations, and promises required under the terms of the Warrant Agreement.

49. System1 breached its duties to abide by the terms and obligations of the Warrant Agreement by refusing to allow Plaintiffs to exercise their Warrants and falsely stating the Warrants would become exercisable only upon the effectiveness of a form S-1.[7]

---

[7] *See CRCM Institutional Master Fund, et al., v. Getty Images Holdings, Inc.*, 1:23-cv-01074-JSR, EFC No. 51, (SDNY, Oct. 26, 2023) (where this Court found the defendant breached its Warrant Agreement by failing to exercise warrants 30 days after the close of a business combination, and that the Form S-4 was dis register the warrants at issues).

50. System1's failures and refusals to permit the exercise of the Plaintiffs' Warrants constituted material breaches of the Warrant Agreement, as System1 had a duty to permit the Warrants to be exercised on August 22, 2022.

51. As a direct and proximate result of System1's breaches, the Plaintiffs were deprived of the opportunity to exercise their Warrants when it was profitable to do so, mitigated their damages by selling their Warrants at a loss, and as a result suffered substantial damages in an amount to be proven at trial.

## V. SECOND CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

52. Plaintiffs hereby adopt and incorporate each allegation set forth above.

53. The Warrant Agreement is an enforceable contract that System1 expressly assumed.

54. Further, Plaintiffs are beneficiaries of the Warrants pursuant to Section 2.3.2 of the Warrant Agreement and are thereby a third-party beneficiary. (Exhibit A § 2.3.2). As third-party beneficiaries, as with authority from the registered holders, Plaintiffs have rights under the Warrant Agreement pursuant to Section 9.4 (Exhibit A § 9.4 ).

55. System1 has breached the implied covenant of good faith and fair dealing in the Warrant Agreement by taking deliberate steps designed to impede and prevent, and which did impede and prevent, the Plaintiffs' exercise of their Warrants. These steps include:

   a. Falsely asserting, directly and through its agent, Kidambi, that the Warrant shares required registration of a Form S-1 and that the Warrants therefore could not be exercised;

    b.   Rejecting the Plaintiffs' exercise inquiries in March and April 2022, on the basis of this same false assertion; and

    c.   Engineering or exploiting a registration schedule for the Warrants that operated to deprive Warrant holders of the value of their Warrants.

56. System1's breaches of its duty of good faith and fair dealing have substantially impaired the Plaintiffs' ability to maximize the value of their Warrants by preventing the Plaintiffs from exercising their Warrants when it was profitable to do so and causing the Plaintiffs to mitigate their damages by selling their Warrants at a loss.

## VI.   THIRD CAUSE OF ACTION

**Securities Act of 1933 § 12(a)(2) (15 U.S.C. § 77*l*(a)(2))**
**(In the Alternative)**

57. Plaintiffs hereby adopt and incorporate each allegation set forth above.

58. This claim is being asserted in the alternative event that the Warrants were not exercisable until the effectiveness of System1's subsequent Form S-1 on the grounds that System1, by means of a false and misleading statement(s), misrepresented that the Warrants would be exercisable February 28, 2022.

59. The preliminary prospectus filed with the December 16, 2021, Form S-4, and the prospectus filed on December 23, 2021, after the Form S-4 was deemed effective, both included the identical language from the Warrant Agreement stating:

> The Company agrees that as soon as practicable, but in no event later than twenty (20) Business Days after the closing of its initial Business Combination, it shall use commercially reasonable efforts to file with the Commission a registration statement for the registration, under the Securities Act, of the Class A ordinary shares issuable upon exercise of the Warrants. The Company shall use its commercially reasonable best efforts to cause the same to become effective and to maintain the effectiveness of such registration statement, and a current prospectus relating thereto, until

the expiration or redemption of the Warrants in accordance with the provisions of this Agreement.

60. System1 asserted to Plaintiffs that the Form S-4 did not register the Warrants and a Form S-1 was needed. The Form S-1 did not become effective until March 4, 2022.

61. Nevertheless, System1 negligently failed to use best efforts to file a Registration Statement which would be deemed effective in a timely manner and consistent with the Warrant Agreement.

62. System1 was required to make truthful statements in its prospectus. Instead, System1 made no reasonable efforts to comply with the statements made in the prospectus.

63. System1 is liable to Plaintiffs for damages in an amount to be determined at trial for its untrue statements of material fact made in the prospectus about registration.

## VII.   FOURTH CAUSE OF ACTION

**Securities Exchange Act of 1934 § 11 (15 U.S.C. § 77k)**
**(In the Alternative)**

64. Plaintiffs hereby adopt and incorporate each allegation set forth above.

65. This claim is being asserted in the alternative event that the Form S-4 did not register the Warrants.

66. The System1 Form S-4 that became effective on December 20, 2021, was a registration statement by System1.

67. The Form S-4 contains multiple representations by System1 that the Form S-4 was registering the Warrant Shares.

68. For example, the very first page of the System1 Form S-4 filed on December 16, 2021, identified "Warrants to purchase Class A common stock" among the classes of "Securities to be Registered."

69. To the extent the System1's Form S-4 did not effectively register the Warrant Shares, these representations by System1 were untrue statements of material fact.

70. Since filing the Form S-4, System1 has claimed that a Form S-1 was required for, indicating that it did not intend to register the Warrants on the Form S-4. To the extent the S-4 did not effectively register the Warrants, the representations in the Form S-4 stated in paragraph 59 above also omitted the material fact that System1 did not intend to register the Warrants on the Form S-4.

71. System1 knew how to state its intention not to register certain securities.

72. Carveout disclosure statements have been deployed in other SPAC business transactions in which companies intended not to register Warrant shares on the Form S-4. For example, in the SPAC business combination for Virgin Galactic Holdings, Inc. (NYSE: SPCE), the Form S-4 included a risk factor stating, "We are not registering the [Warrant shares] under the Securities Act or any state securities laws at this time, and such registration may not be in place when an investor desires to exercise Warrants, thus precluding such investor from being able to exercise its Warrants and causing such Warrants to expire worthless." Virgin Galactic Holdings, Inc. Form S-4/A, filed Oct. 8, 2019, at 64. System1 provided no similar risk factor in its Form S-4.

73. System1's purported intention not to register the Warrant Shares on the Form S-4 was a material fact that System1 was required to disclose in the Form S-4 to make the statement summarized above not misleading.

74. Plaintiffs purchased Warrants issued pursuant to or traceable to the Form S-4 registration statement.

75. As a direct and proximate consequence of System1's failure to register the Warrant Shares on the Form S-4, Plaintiffs suffered damages in an amount to be determined at trial.

## VIII.  FIFTH CAUSE OF ACTION

**Securities Exchange Act of 1934 Section 10(b) (15 U.S.C. § 78j) and 17 C.F.R. § 240.10b-5 (In the Alternative)**

76. Plaintiffs repeat each of the foregoing allegations as if fully set forth herein.

77. This claim is being asserted in the alternative event that the Form S-4 did not register the Warrant.

78. In connection with the purchase and sale of Warrants, System1 defrauded the Plaintiffs in violation of Exchange Act § 10(b) and 17 C.F.R. § 240.10b-5 ("Rule 10b-5").

79. The Form S-4, including the prospectus and exhibits, did not contain a risk factor or other disclosure stating that the Form S-4 did not register the Warrant Shares.

80. The fact that the Form S-4 did not register the Warrants was material, and the failure to make this disclosure rendered the Form S-4 was misleading to potential buyers of the Warrants, including Plaintiffs.

81. System1 knew that this fact was material, as it was one of the facts (together with the date of the consummation of the Business Combination and the Warrant Agreement) that would determine when the Warrants would become exercisable and when the Warrants could in turn be offered and sold by System1 upon exercise of its Warrants.

82. Plaintiffs reasonably relied on System1's material misrepresentations and omission when they interpreted the Form S-4 as having registered the Warrants for offering. This is because, inter alia: (i) the Form S-4 indicated that the Warrant Shares were being registered, (ii) a registration statement on Form S-4 may be used to register shares of common stock underlying

warrants, and (iii) C&DI 139.01 of the SEC's Division of Corporation Finance required System1 to register the Warrants via the Form S-4.

83. System1's material misrepresentations and omission from the Form S-4 caused the Plaintiffs to buy Warrants with a materially false understanding of when (or if) those Warrants would become exercisable for registered Warrant Shares.

84. System1 knew its material misrepresentations and omission from the Form S-4 would cause investors, including Plaintiffs, to purchase Warrants with a materially false understanding of when those Warrants would become exercisable.

85. Plaintiffs justifiably relied on System1's misrepresentations and omissions in the Form S-4.

86. System1 had both the motive and opportunity to commit this fraud and there is strong circumstantial evidence of conscious misbehavior or recklessness.

87. System1 acted with scienter in that it knew or recklessly disregarded the fact that the public documents and statements it issued and disseminated to the investing public were materially false and misleading. System1, and its insiders, knowingly and substantially participated or acquiesced in the issuance and dissemination of those statements and documents as primary violations of the federal securities laws.

88. System1 knew or recklessly disregarded the false and misleading nature of the information it caused to be disseminated to the investing public concerning the Warrants, the registration process, and Form S-4.

89. System1, including affiliates and insiders, because of their positions and access to material non-public information, knew or recklessly disregarded the fact that System1 did not disclose its intention to bar the timely exercise of the Warrants. Further, System1, including

affiliates and insiders knew or recklessly disregarded the fact that this intention to bar the timely exercise of the Warrants was being concealed from the public and that the affirmative representations made concerning the exercisability of the Warrants were false and misleading in the absence of additional disclosure.

90. System1's scienter is further underscored by the fact that the Sponsor and other insiders had a significant incentive to prevent the exercise of the Warrants. As alleged, System1, including affiliates, the Sponsor, and other insiders, had incentives to maintain System1's stock price at certain levels. As a result, they reaped over 60 million Class A shares and, upon the cashless exercise of private placement warrants, obtained more than 5 million additional shares through a favorable conversion ratio due to the then-prevailing stock price.

91. As detailed herein, System1 engaged in a scheme to mislead and deceive the market and a course of conduct that operated as a fraud or deceit on the Plaintiffs by failing to disclose and misrepresenting the terms of the Warrants and the Form S-4 and by making other false or misleading statements alleged herein. As a direct result of System1's failure to allow the exercise of the Warrants, and because of the Plaintiffs' purchases of Warrants, the Plaintiffs suffered economic loss, i.e., damages, under the federal securities laws and common law claims alleged herein.

92. System1's misrepresentations and omission, rendering the Form S-4 intentionally false and misleading, damaged the Plaintiffs by preventing them from realizing a profit on their Warrants and by instead causing the Plaintiffs to sell and/or trade their Warrants at a loss.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

1. Grant judgment on all claims made by Plaintiffs herein.

2. Award Plaintiffs general and compensatory damages according as to be determined at trial;

3. Award Plaintiffs costs and disbursements, including attorney's fees, related to this dispute; and

4. Any further relief deemed just and proper by this Court.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury in this action of all issues so triable.

Respectfully submitted,

/s/ William B. Federman
William B. Federman
(S.D. New York #WF9124)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
P: (405) 235-1560 F: (405) 239-2112
wbf@federmanlaw.com
*Attorney for Plaintiffs*